**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **Access Center for Independent Living;** | **:** | **Case No. 3:15-cv-444** |
| **Mark Theobald; Sylvia Jane Cook; John** | **:** | |
| **Kenneth Dixon; Melody Ann Burba; and** | **:** | |
| **National Federation of the Blind of Ohio,** | **:** | |
| | **:** | |
| **Plaintiffs,** | **:** | **Judge Thomas M. Rose** |
| | **:** | |
| **v.** | **:** | **Chief Magistrate Judge Ovington** |
| | **:** | |
| **WP Glimcher Inc.; Dayton Mall II, LLC;** | **:** | |
| **Dayton Mall Venture, LLC; Macy's Retail** | **:** | |
| **Holdings, Inc.; Elder Ohio I Delaware** | **:** | |
| **Business Trust; the Bon-Ton Department** | **:** | |
| **Stores, Inc.; Sears Roebuck and Co.; and** | **:** | |
| **Greater Dayton Regional Transit** | | |
| **Authority** | | |
| | **:** | |
| **Defendants.** | **:** | |

---

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

## I.      INTRODUCTION

1.      It is a fundamental tenet of the Americans with Disabilities Act that people with disabilities have the freedom to access stores, restaurants, and employment in their own community.  The Dayton Mall ("Mall") is the largest shopping location in Montgomery County, Ohio.

2.       For the last thirty years, Defendants WP Glimcher Inc.; Dayton Mall II, LLC; Dayton Mall Venture, LLC; Macy's Retail Holdings, Inc.; Elder Ohio I Delaware Business Trust; the Bon-Ton Department Stores, Inc.; and Sears Roebuck and Co. (collectively, "the Mall Defendants") have had a policy and practice of allowing Defendant Greater Dayton Regional Transit Authority ("RTA") to maintain and operate a bus stop at the Dayton Mall.  For many

years the stop was close to store entrances where passengers were only a few short steps from an entrance to the Mall. All seven RTA bus routes that serve the area surrounding the Mall stopped there.

3.     However, in 2003 the Mall Defendants required the RTA to move the bus stop to the very back corner of the large rear parking lot, the distance of two football fields away from the building entrance. The Mall Defendants also drastically restricted the types and number of buses that could service the Mall. People who are blind or have mobility impairments now must make unnecessary bus transfers and endure an exhausting and dangerous trip dodging cars through the Mall parking lot just to gain access to the Mall entrance. As a result, individuals with such disabilities have been effectively excluded from accessing the Mall and are being treated as second class citizens.

4.      One in five Ohioans is a person with disabilities. Nearly one in three people with disabilities lives in poverty, and adults with disabilities are more than twice as likely as those without disabilities to lack access to adequate transportation. Because many people who are blind or have mobility impairments do not have the option to drive cars, public transportation is critical for them to access the community. Long distances, unnecessary transfers, and other barriers between public transportation and their ultimate destinations are disproportionately harmful to people with such disabilities.

5.     Plaintiffs in this lawsuit want the Mall Defendants to change their policy and practice so that people with disabilities who are blind or have mobility impairments have similar access to their community's mall that others already enjoy. This action seeks declaratory and injunctive relief, costs, and attorneys' fees due to the Mall Defendants' refusal to reasonably accommodate people with such disabilities who ride the bus, and seeks to gain the same

meaningful access to the Dayton Mall for people with disabilities as those without disabilities already enjoy.

## II.     JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a)(4) because Plaintiffs' claims arise under federal statutes and involve civil rights, specifically the Americans with Disabilities Act, 41 U.S.C. §§ 12181 *et seq*.

7.      Declaratory, equitable, and injunctive relief are sought pursuant to 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, 42 U.S.C. § 12188(a), 42 U.S.C. § 2000a-3, and Fed. R. Civ. P. 65.

8.      Venue lies in this judicial district under 28 U.S.C. § 1391(b) and S.D. Ohio Civ. R. 82.1 because:

a)      the events, acts, or omissions that give rise to the Plaintiffs' claims occurred in this district; and

b)      for purposes of venue, Defendants reside in and/or have a principal place of business in this district for purposes of 28 U.S.C. § 1391(c).

9.      Attorneys' fees and costs are sought under 42 U.S.C. § 12205,  42 U.S.C. § 2000a-3, 42 U.S.C. § 12205, and Fed. R. Civ. P. 54.

## III.    PLAINTIFFS

### Plaintiff Mark Theobald

10.     Mark Theobald resides at 111 Harris Street #201, Dayton, Ohio 45402.

11.     Mr. Theobald is recovering from a brain stem stroke that occurred in 2011.

12.     He can walk with the aid of a walker, but he has severe balance issues, gets dizzy, and needs to stop and rest frequently for longer distances.

13. Mr. Theobald uses the RTA fixed route bus system ("bus") to access places in the community.

14. He has ridden the RTA's X5 bus route from downtown Dayton to the vicinity of Dayton Mall. The X5 bus route is one that, until the Mall changed its policy and practice in 2003, went directly to the Dayton Mall entrance.

15. The RTA's X5 bus route currently stops on Kingsridge Drive adjacent to the Golden Corral Restaurant that is located more than a block from the Mall Ring Road, which at is the outer edge of the Mall property.

16. Bus passengers who choose to use the Kingsridge Drive stop must navigate a busy intersection to access the Mall property. Once on the Mall property, one must then walk past the current Mall bus stop and through the Mall parking lot just to get to the Mall entrance. The total distance is more than 1,400 feet.

17. When Mr. Theobald exited the bus at the Kingsridge Drive bus stop to access the Mall, he suffered a long, difficult, dangerous walk across the busy street and through the long parking lot. He ended up spending most of his energy simply getting to the Mall, rather than walking around the Mall.

18. The present locations of bus stops near the Mall are too difficult for him to navigate alone, and this barrier has effectively deterred him from visiting the Mall.

19. Mr. Theobald would ride the bus to the Dayton Mall if the bus stop was located in an accessible location and the Mall Defendants did not unnecessarily limit the available bus routes directly servicing the Mall.

### Plaintiff Sylvia Jane "Janie" Cook

20. Sylvia Jane "Janie" Cook resides at 6217 North Main Street, Apartment 321, Dayton, Ohio 45415.

21.     Ms. Cook suffers from limited mobility as a result of knee and hip replacements, most recently in September 2014. She is unable to walk long distances without significant pain. Standing and going up and down stairs are frequently difficult and painful for her.

22.     Before her disability made it difficult for her to work, Ms. Cook was a nurse and Supervisor of Housekeeping at the University of Dayton.

23.     Ms. Cook values her independence and mobility. She likes to ride the bus with friends to restaurants and stores.

24.     In April 2014, Ms. Cook rode the number 19 RTA bus route to the Mall. The number 19 bus route is one that, until the Mall changed its policy and practice in 2003, went directly to the Mall entrance. She had expected the bus would stop at the entrance to the Mall. It did not. She exited the bus at the stop near the Frisch's Restaurant on State Route 741 and suffered a long, painful walk before finally arriving at the Mall.

25.     When it was time for Ms. Cook to return home, she walked around the Mall building looking for a bus stop that was closer than the one she had used to get there. Eventually, she called the RTA and was told that the closest bus stop was located at the Mall Ring Road. However this stop was also difficult and painful for her to reach. It was too far away.

26.     Because the bus stop location at the Mall would force her to take a long, painful, and dangerous walk just to get to and from the bus stop, Ms. Cook has not attempted to take the bus to the Mall since her April 2014 visit.

27.     The present location of the bus stop is a barrier to Ms. Cook visiting and shopping at the Mall.

28.     By limiting the buses that can go to the Mall, the Mall requires Ms. Cook to make an extra bus transfer to get from the Mall to her home. An extra transfer is an additional barrier for Ms. Cook because of the additional standing and stairs involved.

29.     Ms. Cook would ride the bus to the Dayton Mall again if the Mall bus stop was located in an accessible location and the Mall Defendants did not unnecessarily require an extra transfer as a result of having limited the available bus routes servicing the Mall.

## **Plaintiff John Kenneth Dixon**

30.     John Kenneth Dixon resides at 205 Outer Belle Road #A, Trotwood, Ohio 45426.

31.     Mr. Dixon has cerebral palsy, spastic dysplasia, and limited mobility. His use of his legs has declined in recent years. He is unable to walk substantial distances without crutches, and frequently uses a motorized scooter for mobility at work and elsewhere.

32.     Mr. Dixon is employed as an Information & Referral Specialist with the Access Center for Independent Living, an advocacy organization for persons with disabilities.

33.     Mr. Dixon uses the RTA fixed route bus system to access work and other places in the community.

34.     However, due to his disability and the difficulty he would experience traversing the long and dangerous route from the available bus stops to the Mall entrance, Mr. Dixon has been deterred from attempting to ride the bus to the Mall.

35.     The present locations of the bus stops that service the Mall are a barrier to Mr. Dixon visiting and shopping there.

36.     In addition, as a result of the Mall Defendants' policy and practice of limiting the bus routes that can stop at the Mall bus stop, Mr. Dixon is required to make an extra transfer in order to ride the bus to the Mall.

37.     Mr. Dixon once had a fall while making a transfer on a different route.

38.     Requiring unnecessary transfers increases the difficulty and danger of a bus trip for Mr. Dixon  and others with similar disabilities

39.     Mr. Dixon would ride the RTA bus to the Mall if the Mall bus stop was located in an accessible location and the Mall did not unnecessarily limit the available bus routes directly servicing the Mall.

**Plaintiff Melody Ann Burba**

40.     Melody Ann Burba resides at 334 Middle Street, Dayton, Ohio 45402.

41.     Ms. Burba has cerebral palsy, carpal tunnel, arthritis, and hearing loss.  She typically utilizes a motorized wheelchair.

42.     She also has a cognitive impairment and has difficulty finding her way, locating objects, and making bus transfers.

43.     Ms. Burba uses the RTA's fixed route bus system to access places in the community.

44.     She was formerly employed as an Information & Referral Specialist with the Access Center for Independent Living.  During her employment, she typically rode the fixed route RTA bus to work.

45.     Ms. Burba has also ridden the fixed route bus to the Dayton Mall.

46.     As a result of the Mall Defendants' policy and practice of limiting the bus routes that can stop at the Mall bus stop, Ms. Burba had to transfer to another bus at a separate transfer hub to get to the Mall.

47.     Navigating the Mall parking lot is particularly dangerous for Ms. Burba because she cannot adequately hear traffic.

48.     The present bus stop transfers required to access the Mall are too difficult for Ms. Burba to navigate alone, and have effectively deterred her from shopping at the Mall.

7

49.     In addition, the lack of a safe route from the bus stop to the Mall entrance impedes her ability to get to the Mall.

50.      Ms. Burba would ride the bus to the Dayton Mall if the bus stop was located in an accessible location and the Mall Defendants did not unnecessarily limit the available bus routes servicing the Mall, which requires her to make an additional transfer.

### Plaintiff Access Center for Independent Living

51.     The Access Center for Independent Living ("Access Center") is a non-profit corporation incorporated in the State of Ohio with a main office located at 1329 Stanley Avenue, Dayton, Ohio 45404-2815. It serves counties in the Miami Valley area, including Montgomery County, Ohio.

52.      The Access Center's mission is to ensure that people with disabilities have complete access to the communities in which they wish to live.

53.     The Access Center offers a wide range of services and opportunities designed to assist people with disabilities in gaining and maintaining independence in everyday living.  It also provides information and support to community organizations and businesses necessary for providing inclusive programs and services to all citizens.  Its board and staff are comprised of least 51% people with disabilities.

54.     The Access Center has expended substantial organizational resources advocating for individuals with disabilities who seek to access the needed amenities of life, like shopping and the opportunity to work at the Dayton Mall, by public transportation.

55.     If people with disabilities could access such amenities, like the Dayton Mall, by public transportation without barriers to their use, the Access Center could and would devote these resources to other purposes consistent with its mission.

56. Shortly after the Mall Defendants required the Mall bus stop to be moved in 2003, Access Center representatives served on a committee that worked to restore the bus stop to an accessible location.

57. The Access Center is pursuing this action to protect and advocate for the rights and interests of its constituents who seek to utilize public transit to access shopping, restaurants, and employment opportunities at the Mall.

58. The Access Center has found the current location of the Mall bus stop to be a barrier to use of the Mall for people with disabilities due to the distance from the stop to the Mall entrance, the dangerous parking lot with no accessible route that lies between the stop and the Mall entrance, and the requirement that many bus riders must transfer to access the only routes servicing the Mall.

59. Many constituents of the Access Center would be able to ride the bus to the Mall if the stop was adjacent to the Mall entrance and the Mall Defendants did not unnecessarily limit the available bus routes servicing the Mall.

**Plaintiff The National Federation of the Blind of Ohio**

60. The National Federation of the Blind of Ohio ("NFB Ohio") is a 501(c)(3) nonprofit membership organization made up of people who are blind of all ages, their families, and friends. Its main office is located in Columbus, Ohio with a local chapter in the Dayton area.

61. The NFB Ohio promotes the full participation and integration of people who are blind in Ohio communities by protecting and promoting the rights of people who are blind, and by advocating for policies that eliminate discrimination and guarantee equal access to the amenities of American society.

62. The NFB Ohio is pursuing this action to protect its members, as well as to advocate for the rights and interests of its members who seek to utilize public transit to access shopping, restaurants, entertainment, and employment opportunities at the Dayton Mall.

63. Members of the NFB Ohio use public transportation provided by the RTA to access entertainment, restaurants, shopping, and employment opportunities.

64. For people who are blind, the location of the Mall bus stop poses a barrier to visiting, shopping, and working at the Mall due to the distance from the current stop to the Mall entrance, the dangerous parking lot with no accessible route that lies between the stop and the Mall entrance, and the requirement that many bus riders must transfer to access the only routes servicing the Mall.

65. People who are blind, including NFB Ohio members, would be able to ride the bus to the Mall if the bus stop was adjacent to the Mall entrance and the Mall Defendants did not unnecessarily limit the available bus routes servicing the Mall.

IV.    **DEFENDANTS**

<u>**Defendant WP Glimcher Inc.**</u>

66. Defendant WP Glimcher Inc. is an Indiana corporation registered as a foreign corporation in the State of Ohio and headquartered in Columbus, Ohio.

67. According to its website, "with a portfolio of 121 enclosed regional malls and open-air lifestyle community centers, WP Glimcher [Inc.] is an industry-leading, multi-faceted retail real estate owner, developer and manager."

68. Upon information and belief, the Dayton Mall is one of the 121 "enclosed regional malls and open-air lifestyle community centers" comprising Defendant WP Glimcher Inc.'s real estate portfolio.

69.     Upon information and belief, WP Glimcher Inc. has held itself out as having authority to negotiate on behalf of the other Defendants named in this action regarding the Mall bus stop.

70.     Upon information and belief, WP Glimcher Inc. has been and continues to be engaged in the day-to-day management of the Dayton Mall.

## Defendant Dayton Mall II, LLC

71.     Defendant Dayton Mall II, LLC is a Delaware corporation registered as a foreign corporation in the State of Ohio.

72.     Upon information and belief, Defendant Dayton Mall II, LLC is a wholly owned subsidiary of Defendant WP Glimcher Inc.

73.     Upon information and belief, Defendant Dayton Mall II, LLC owns most of the property that constitutes the Mall located at 2700 Miamisburg Centerville Rd, Dayton, Ohio.

74.     Upon information and belief, Defendant Dayton Mall II LLC has delegated management of the Mall to Defendant Dayton Mall Venture, LLC.

## Defendant Dayton Mall Venture, LLC

75.     Defendant Dayton Mall Venture, LLC is a Delaware corporation registered as a foreign corporation in the State of Ohio.

76.     Upon information and belief, Defendant Dayton Mall Venture, LLC operates and manages the Mall on behalf of Defendant Dayton Mall II, LLC.  Such management includes leasing portions of the mall property to commercial tenants.

77.     Defendant Dayton Mall Venture, LLC's operation and management of the Mall has included the negotiation of a licensing agreement with the RTA.  Among other things, this agreement licenses part of the Mall's parking lot and drives to the RTA for public transit access, and allows the RTA to construct and operate a bus stop on the Mall property.

78.     Upon information and belief, Defendant Dayton Mall Venture, LLC is a wholly owned subsidiary of and is controlled by Defendant WP Glimcher Inc.

79.     Upon Information and belief, Defendant WP Glimcher Inc. management acts on behalf of Defendant Dayton Mall Venture, LLC regarding the Dayton Mall.

80.     Upon information and belief, Defendant Dayton Mall Venture, LLC is responsible for negotiating the location and specifications of any RTA bus stop currently located at or to be constructed on the Mall property, and for enforcing this agreement for the benefit of the Mall's "anchor stores."

### Defendant Macy's Retail Holdings, Inc.

81.     Defendant Macy's Retail Holdings, Inc. is a New York corporation with its principal place of business in Cincinnati, Ohio.

82.     Upon information and belief, Defendant Macy's Retail Holdings, Inc. operates a Macy's department store in the Mall.

83.     Additionally, Defendant Macy's Retail Holdings, Inc. owns and controls a portion of the Mall where its store is located, as well as a portion of the parking lot adjacent to its store.

84.     Upon information and belief, Defendant Macy's Retail Holdings, Inc. is one of the Mall's anchor stores.

85.     Upon information and belief, as an anchor store, Defendant Macy's Retail Holdings, Inc. is party to an operating agreement with the other anchor stores and Defendant Dayton Mall Venture, LLC.  Attached to the operating agreement is a plot plan placing the Mall bus stop at a location even further away from the Mall entrance than its current location.

86.     Upon information and belief, as an anchor store, partial owner of the Mall property, and/or as a party to the Mall's operating agreement, Defendant Macy's Retail Holdings, Inc.'s approval is a necessary prerequisite to any change in Defendant Dayton Mall

Venture LLC's current agreement with the RTA, including approval to allow the RTA to construct a new bus stop, to allow for the modification of an existing bus stop, or to change the location of a bus stop on the Mall property.

87.    Upon information and belief, as an anchor store, partial owner of part of the Mall property, and as a party to the operating agreement with Defendant Dayton Mall Venture, LLC and the Mall's other anchor stores, Defendant Macy's Retail Holdings, Inc.'s approval is a necessary prerequisite to any modification of the Mall parking lot, including approval to allow for any modification that would provide for an accessible route from a bus stop to a Mall entrance.

88.    Upon information and belief, Defendant Macy's Retail Holdings, Inc. has rejected proposals by the RTA to move the bus stop closer to the Mall entrance.

**<u>Defendants Elder Ohio I Delaware Business Trust<br>and the Bon-Ton Department Stores, Inc.</u>**

89.    Defendant Elder Ohio I Delaware Business Trust is a Delaware business trust registered to operate in the State of Ohio.

90.    Defendant The Bon-Ton Department Stores, Inc. is a Pennsylvania corporation registered as a foreign corporation in the State of Ohio.

91.    Upon information and belief, Defendant Bon-Ton Department Stores, Inc. ("Bon-Ton") became successor in interest to the now defunct Elder Beerman Stores Corporation following a merger of these two entities in 2012.

92.    Upon information and belief, Defendants Elder Ohio I Delaware Business Trust and The Bon-Ton Department Stores, Inc. jointly operate an "Elder Beerman" department store in the Dayton Mall.  In addition, they own and control a portion of the Mall where their store is located, as well as a portion of the parking lot adjacent to their store.

13

93.     Upon information and belief, Defendants Elder Ohio I Delaware Business Trust and/or Bon-Ton Department Stores, through Elder Beerman, is one of the Mall's anchor stores.

94.     Defendants Elder Ohio I Delaware Business Trust and The Bon-Ton Department Stores, Inc. are also parties to the Mall operating agreement along with the other Defendant anchor stores and Dayton Mall Venture, LLC.  Attached to the operating agreement is a plot plan placing the Mall bus stop at a location even further away from the mall entrance than its current location.

95.     Upon information and belief, as an anchor store, partial owners of part of the Mall property, and/or as a parties to the Mall operating agreement, Defendants Elder Ohio I Delaware Business Trust and The Bon-Ton Department Stores, Inc.'s approval is a necessary prerequisite to any change in Defendant Dayton Mall Venture, LLC's current agreement with the RTA, including the decision to allow the RTA to construct a new bus stop, to allow for the modification of an existing bus stop, or to change the location of a bus stop on the Mall property.

96.     Upon information and belief, as an anchor store, partial owners of part of the Mall property, and/or as parties to the operating agreement, Defendants Elder Ohio I Delaware Business Trust and The Bon-Ton Department Stores, Inc.'s approval is a necessary prerequisite to any modification of the Mall parking lot, including any modification that would provide for an accessible route from a bus stop to a Mall entrance.

97.     Upon information and belief, Defendants Elder Ohio I Delaware Business Trust and The Bon-Ton Department Stores, Inc. have rejected proposals by the RTA to move the bus stop closer to the Mall entrance.

### Defendant Sears Roebuck and Co.

98.     Defendant Sears Roebuck and Co. is a New York corporation registered as a foreign corporation in the State of Ohio.

14

99.     Defendant Sears Roebuck and Co. operates a "Sears" department store in the Mall.

100.     Upon information and belief, Defendant Sears Roebuck and Co owns and controls a portion of the Mall where their store is located, as well as a portion of the parking lot adjacent to their store.

101.     Upon information and belief, Defendant Sears Roebuck and Co. is one of the Mall's anchor stores.

102.     Upon information and belief, as an anchor store, Defendant Sears Roebuck and Co. is party to an operating agreement with the other anchor stores and Defendant Dayton Mall Venture, LLC.  Attached to the operating agreement is a plot plan placing the Mall bus stop at a location even further away from the mall entrance than its current location.

103.     Upon information and belief, as an anchor store, partial owner of part of the Mall property, and/or as a parties to the operating agreement, Defendant Sears Roebuck and Co. approval is a necessary prerequisite to any change in Defendant Dayton Mall Venture, LLC's current agreement with the RTA, including the decision to allow the RTA to construct a new bus stop, to allow for the modification of an existing bus stop, or to change the location of a bus stop on the Mall property.

104.     Upon information and belief, as an anchor store, partial owners of part of the Mall property, and/or as parties to the operating agreement, Defendant Sears Roebuck and Co. approval is a necessary prerequisite to any modification of the Mall parking lot, including any modification that would provide for an accessible route from a bus stop to a Mall entrance.

105.     Upon information and belief, Defendant Sears Roebuck and Co. has rejected proposals by the RTA to move the bus stop closer to the Mall entrance.

**<u>Defendant Greater Dayton Regional Transit Authority</u>**

106.    Defendant Greater Dayton Regional Transit Authority ("RTA") is a public mass-transit provider headquartered in Montgomery County, Ohio.

107.    The RTA is a public agency under Ohio law.

108.    The RTA generally serves the greater Dayton, Ohio area, including communities within Montgomery County and parts of Greene County, Ohio.

109.    The RTA maintains and operates the bus stop located on the Dayton Mall site.

110.    Upon information and belief, the RTA maintains and operates the current Mall bus stop pursuant to a licensing agreement with Dayton Mall Venture LLC.

111.    The RTA has repeatedly offered to pay for the construction, maintenance, repair, and operation of a new, accessible bus stop near an entrance to the mall building, but this offer has been rejected by the Mall Defendants.

112.    The RTA has also asked the Mall Defendants for permission to increase the number of RTA bus lines servicing the Mall property, but the Mall Defendants have refused this request.

113.    The RTA is a necessary party to this action because the relief sought by the Plaintiffs in this action require the continued cooperation of the RTA, and because this matter directly implicates the RTA's rights, obligations, and interests.

**V.    STATEMENT OF FACTS**

**<u>Removal of the Mall's accessible bus stop</u>**

114.    Regional transit authorities offer fixed route bus services which operate along a prescribed route according to a fixed schedule.

115.    The Greater Dayton Regional Transit Authority operates a fixed route bus system to points of interest throughout the Dayton metropolitan area, including on the property of the Dayton Mall.

116.    The Mall Defendants had a policy and practice at the Dayton Mall for many years which allowed all seven RTA bus routes that serve the area around the Mall to stop immediately adjacent to a Mall entrance.  This policy and practice granted patrons, including those with disabilities, easy access to the Mall.

117.    In the early 1980s, the Mall's policy and practice allowed the RTA to operate and maintain a bus stop on the Mall property on the front (North side) of the Mall, next to the Mall entrance.  In the mid-1990s the stop was moved to the back (South side) of the Mall where the Guitar Center store is currently located.  There, passengers were still only a few short steps from an entrance to the Mall.

118.    In 2003, the Mall Defendants required that the bus stop on the Mall property be removed from the location near the entrance and relocated to the "Mall Ring Road" on the periphery of the Mall parking lot.

119.    The Mall bus stop is now placed approximately 600 feet from the Mall's main entrance, and requires bus passengers to walk through a parking lot without any cross walks or other protective measures from traffic.

120.    This bus stop location places passengers with limited mobility or vision impairment in significant danger because they must now navigate a long, busy, dangerous parking lot just to gain access to the Mall.

121.    At the same time it required the change in the bus stop location, the Mall Defendants also limited the bus routes allowed on Mall property.  Only three of the seven routes

17

that serviced the Mall were allowed to continue to stop at the Mall. Four bus routes that directly linked the Mall to downtown Dayton and other points of interest were no longer allowed to stop there.

122.    In order to access the Mall from those four routes, passengers must now get off their bus at a nearby hub and take one of the three suburban circulator bus routes that are still allowed to access the Mall bus stop. There is no direct route from downtown Dayton to the Mall bus stop.

123.    According to the 2013 U.S. Census American Community Survey, there are 53,968 people with disabilities who live along the seven bus routes that formerly stopped at the Mall bus stop. Of these, 38,603 people with disabilities live along the four routes that are no longer allowed to stop at the Mall. They must now transfer buses to get there.

124.    Alternatively, riders can exit their bus at stops located off of the Mall property without going to the bus hub to transfer, but they then must walk much farther and cross very busy intersections just to get to the Mall entrance. This is not a viable option for many bus passengers with disabilities.

**Efforts to make the Mall bus stop accessible**

125.    Since the bus stop was relocated to the periphery of the Mall parking lot, passengers and advocacy groups in the community have sought to relocate the bus stop to a location that is again accessible to the Mall for people with disabilities and to restore the lost routes.

126.    In an effort to serve its customers in the Dayton area, the RTA has repeatedly reached out to the Mall Defendants to try to restore the lost routes and create a more accessible bus stop on the Mall property that allows access for Mall patrons with disabilities.

127.    In a 2010 letter to the RTA, the Mall Defendants stated a commitment to relocate the bus stop to a location closer to the Mall entrance.

128.    After extensive negotiations, it appeared in 2011 that the Mall Defendants and the RTA were close to reaching an agreement.

129.    In July 2011, the Mall Defendants and the RTA agreed to various details of providing a bus stop, but not to the location of the stop.  The RTA agreed to provide all the costs of constructing, maintaining, repairing, and operating the bus stop area.

130.    However, rather than agreeing to a bus stop that is closer to the Mall entrance as made in the numerous proposals by the RTA, the Mall Defendants would ultimately only agree to a bus stop location that was still at the periphery of the Mall parking lot and even further away from the Mall entrance than the current bus stop. Knowing that the RTA objected to this location, the Mall Defendants executed an agreement among themselves adopting this distant location.

131.    Defendant WP Glimcher Inc. has asserted that it could not agree to move the bus stop to a more accessible location without the approval of the Defendant anchor stores, and those stores refused to agree to such changes.

132.    On information and belief, some or all of the anchor store Defendants have joined with Defendant WP Glimcher Inc. in refusing to move the Mall bus stop to an accessible location.

133.    In 2014 and again in 2015, the RTA tried to re-interest the Mall Defendants in moving the bus stop closer and restoring the routes.  The RTA made several specific proposals to do this.  In each of the RTA proposals the RTA assumed responsibility for the costs of the improved stop.  All of these proposals have been rejected by the Mall Defendants.

134.    Plaintiffs wrote to the Mall Defendants on April 3, 2015 requesting that, as a reasonable modification of its current policy and practice under the Americans with Disabilities Act, the Mall bus stop be moved to an accessible location and that more routes be allowed to stop there to reduce the need for transfers.  Plaintiffs have provided specific examples of bus stop locations that are close to doors and configurations that would accommodate all seven routes that currently stop in the area of the Mall.  Such modification is reasonable and necessary to afford Plaintiffs access to full and equal enjoyment of the Mall.  The Mall Defendants have refused this request.

## VI.    CAUSE OF ACTION - TITLE III OF THE AMERICANS WITH DISABILITIES ACT

135.    In enacting the Americans with Disabilities Act ("ADA"), Congress expressly determined that society tends to isolate and segregate people with disabilities; that individuals with disabilities continually encounter prejudice and discrimination, including the discriminatory effects of architectural and transportation barriers; that this nation should assure equality of opportunity for full participation, independent living, and economic self-sufficiency to individuals with disabilities; and that continuing discrimination impedes them from competing on an equal basis and pursuing opportunities available to other citizens.  42 U.S.C. § 12101(a).

136.    The purpose of the ADA is to provide a comprehensive national mandate for the elimination of discrimination against individuals with disabilities; to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; to ensure that the Federal Government plays a central role in enforcing the standards on behalf of individuals with disabilities; and to address the major areas of discrimination faced day-to-day by people with disabilities.  42 U.S.C. § 12101(b).

137.     Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.  42 U.S.C. § 12182(a).

138.     Plaintiff Mark Theobald is an individual with disabilities within the meaning of the ADA.  42 U.S.C. § 12102.

139.     Plaintiff Sylvia Jane Cook is an individual with disabilities within the meaning of the ADA.  42 U.S.C. § 12102.

140.     Plaintiff John Kenneth Dixon is an individual with disabilities within the meaning of the ADA.  42 U.S.C. § 12102.

141.     Plaintiff Melody Burba is an individual with disabilities within the meaning of the ADA.  42 U.S.C. § 12102.

142.     Plaintiff the "National Federation of the Blind, Ohio" is an organization which advocates for people with disabilities on behalf of its members, who are individuals with disabilities within the meaning of the ADA. 42 U.S.C. § 12102; 42 U.S.C. § 12182(b)(1)(E).

143.     Plaintiff the Access Center for Independent Living is an organization which advocates for people with disabilities on behalf of its members, who are individuals with disabilities within the meaning of the ADA. 42 U.S.C. § 12102; 42 U.S.C. § 12182(b)(1)(E).

144.     The Dayton Mall is a "place of public accommodation" subject to Title III of the ADA.  42 U.S.C. § 12181(7)(E).

145.     The anchor store Macy's in the Dayton Mall is a "place of public accommodation" subject to Title III of the ADA.  42 U.S.C. § 12181(7)(E).

146.     The anchor store Elder Beerman in the Dayton Mall is a "place of public accommodation" subject to Title III of the ADA.  42 U.S.C. § 12181(7)(E).

147.     The anchor store Sears in the Dayton Mall is a "place of public accommodation" subject to Title III of the ADA.  42 U.S.C. § 12181(7)(E).

148.     The Mall Defendants own, lease (or lease to), and/or operate the Dayton Mall, or are anchor stores within the Dayton Mall, which are all "places of public accommodation" subject to Title III of the ADA.  42 U.S.C. § 12181(7)(E).

149.     The Mall Defendants have engaged in illegal disability discrimination, as defined by Title III, including but without limitation by:

a)     Failing to make reasonable modifications in the Mall Defendants' policies, practices, and procedures where such modifications are necessary to afford Plaintiffs equal access to the full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations of the Mall, 42 U.S.C. § 12182(b)(2)(A)(ii);

b)     Utilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability or perpetuate the discrimination of others who are subject to common administrative control, 42 U.S.C. § 12182(b)(1)(D); and

c)     Failing to remove architectural barriers where such removal is readily achievable. Such architectural barriers include: (1) the lack of any accessible route within the boundary of the Mall site from the current public transportation stops to an accessible entrance to the Mall building;  and (2) the Mall Defendants' failure to prioritize measures to provide access to a place of public

accommodation from public transportation. 42 U.S.C. § 12182(b)(2)(A)(iv); 28

C.F.R. Pt. 36, App. D; 36 C.F.R. Pt. 1191, App. B; and 28 C.F.R. § 36.304.

150.     By refusing to allow the fixed route bus stop to be moved from the very back of a

large and dangerous parking lot and by limiting the bus routes that can utilize the bus stop on the

Mall Defendants' premises, the Mall Defendants have failed to modify their policy and practice

to accommodate the Plaintiffs; utilized standards, criteria, or methods of administration that have

the effect of discriminating against Plaintiffs; and have created a barrier to access which denies

Plaintiffs the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

and accommodations available at the Mall Defendants' facility. As such, Plaintiffs have been

subjected to discrimination resulting in injury to Plaintiffs and others similarly situated.

## VII.   PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

A.     Assume jurisdiction over this matter;

B.     Issue a declaratory judgment holding that the Mall Defendants have violated

Plaintiffs' rights under Title III of the Americans with Disabilities Act;

C.     Issue such injunction as requested by Plaintiffs in the course of these proceedings

to prevent harm from occurring to Plaintiffs' interests;

D.     Enjoin the Mall Defendants from continuing to violate Plaintiffs' rights as set

forth in this Complaint;

E.     Incorporate the RTA into the Court's injunctive and/or declaratory judgment as

necessary to afford Plaintiffs full relief;

F.     Award Plaintiffs' attorneys' fees and costs as permitted by law; and,

G.     Provide such other relief as is just and equitable.

Respectfully submitted,

/s/ Jason C. Boylan
Jason C. Boylan (0082409)
Co-Counsel for Plaintiffs
Disability Rights Ohio
50 West Broad Street, Suite 1400
Columbus, Ohio 43215
Tel: (614) 466-7264
Fax: (614) 644-1888
jboylan@disabilityrightsohio.org

Ellis Jacobs (0017435)
Trial Attorney for Plaintiffs
Stanley Hirtle (0025205)
Advocates for Basic Legal Equality, Inc.
130 West Second Street, Suite 700 East
Dayton, Ohio 45402
Tel: (937) 535-4419
Fax: (937) 535-4600
ejacobs@ablelaw.org
shirtle@ablelaw.org

*Counsel for Plaintiffs*