IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ACCESS CENTER FOR INDEPENDENT LIVING, et al., | : : : | Case No. 3:15-cv-444 |
| | : | Judge Thomas M. Rose |
| Plaintiffs, | : | |
| vs. | : : | |
| WP GLIMCHER, INC., et al., | : : | |
| Defendants. | : | |

**ENTRY AND ORDER GRANTING MALL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 53) AND TERMINATING CASE**

This case is before the Court on the Motion for Summary Judgment (Doc. 53) filed by Defendants WP Glimcher Inc. (n/k/a Washington Prime Group Inc.), Dayton Mall II, LLC, Dayton Mall Venture, LLC, Macy's Retail Holdings, Inc., Elder Ohio I Delaware Business Trust, the Bon-Ton Department Stores, Inc., and Sears Roebuck and Co. (the "Mall Defendants"). Plaintiffs are persons with disabilities who must use a wheelchair or walker for mobility, as well as organizations that assist people with disabilities. Plaintiffs allege that the Mall Defendants violated Title III of the Americans with Disabilities Act ("ADA") by refusing to relocate a public bus stop from the outer portion of the Dayton Mall parking lot to a location as close as feasible to an accessible mall entrance. The Mall Defendants move for summary judgment on all of Plaintiffs' claims. Their Motion for Summary Judgment is ripe (see Docs. 53, 54, 56) and, for the reasons below, it is **GRANTED**.

1

I. **BACKGROUND**

   A. **Facts**

The parties generally do not dispute the facts underlying their dispute, although they disagree regarding the significance of those facts under the ADA. Although both the Mall Defendants and Plaintiffs devote considerable space in their memoranda to the history of their dispute, the basic facts are as follows.

The Dayton Mall is a regional shopping center in Dayton, Ohio that features large parking areas surrounding an enclosed mall structure that houses several anchor stores and other shops. The parking areas are bordered by an outer ring road at the edges of the property, as well as an inner ring road that runs between the parking lots and the mall building. Mall entrances are located at various places along the inner ring road.

The Greater Dayton Regional Transit Authority (the "RTA")[1] operates a fixed route bus system that serves the Dayton metropolitan area. *See* 42 U.S.C.A. § 12141 (defining "fixed route system" as a system of providing designated public transportation on which a vehicle is operated along a prescribed route according to a fixed schedule). Currently, three of its fixed route bus lines stop at a bus stop along the outer ring road at the Dayton Mall. Prior to 2003, the prior owners and general managers of the Dayton Mall—who are not parties to the lawsuit—permitted the RTA to operate a bus stop near a mall entrance. To access the stop near the mall entrance, RTA buses drove along the

---

[1] Plaintiffs added the RTA as a defendant in the Amended Complaint because the relief sought in this action requires the RTA's cooperation, and because this matter directly implicates the RTA's rights, obligations, and interests. (Doc. 27 at ¶ 113.) Plaintiffs do not bring any claim against the RTA.

inner ring road, stopping to allow passengers to board and disembark. On weekend evenings, RTA buses would sit in the lot—up to eight full-size buses at a time—waiting for patrons to leave at closing time.

Over time, Dayton Mall management communicated with the RTA's leadership about problems posed by the bus stop's location and usage, including, without limitation, traffic congestion, bus drivers failing to adhere to designated traffic routes, traffic incidents involving bus drivers resulting in property damage, bus stacking, security issues, and structural damage to the parking lot pavement.

In 2003, Dayton Mall management notified the RTA that the bus stop would be relocated. After briefly moving the stop closer to a mall entrance when the building façade adjacent to the bus stop became damaged, Mall management permanently relocated the stop to a location in the outer portion of the Mall's south parking lot, roughly 600 feet from a mall entrance. The RTA attempted to persuade Mall management to return the bus stop to its prior location, but those efforts were not successful.

In 2015, Plaintiffs Access Center for Independent Living ("Access Center"), National Federation for the Blind of Ohio ("NFB-Ohio"), and several of the individual Plaintiffs, represented by Advocates for Basic Legal Equality, Inc., sent a letter to the Dayton Mall's managers and many of its anchor tenants, asking the Mall Defendants to move the bus stop from the outer ring road to another location at the Dayton Mall where there is presently no bus stop. The Mall Defendants attempted to reach a resolution, but their proposals were rejected. Access Center, NFB-Ohio, and the individual Plaintiffs took the position that the bus stop must be relocated to a Mall entrance, or as close as

3

possible thereto, or else the Mall Defendants would be in violation of the ADA. This lawsuit followed.

### B. The Amended Complaint

Plaintiffs are Access Center, NFB-Ohio, and five individuals: Mark Theobald, Sylvia Jane Cook, John Kenneth Dixon, and Melody Ann Burba. The Mall Defendants have agreed, for purposes of the pending Motion for Summary Judgment, that the individual Plaintiffs are disabled within the meaning of the ADA.

Plaintiffs assert a single cause of action against the Mall Defendants for violation of Title III of the ADA, which prohibits places of public accommodation from excluding disabled persons thus depriving them of the goods and services offered. Specifically, Plaintiffs allege the Mall Defendants violated two ADA prohibitions: "(1) their obligation to make reasonable modifications to their policies, practices, and procedures to enable equal access to people with disabilities, a refusal of which constitutes unlawful disability discrimination under 42 U.S.C. § 12182(b)(2)(A)(ii); and (2) their duty to remove architectural barriers where removal is readily achievable, the failure of which is also disability discrimination under 42 U.S.C. § 12182(b)(2)(A)(iv); Doc. 27, ¶149." (Doc. 54 at 21.)[2] Plaintiffs assert that the Mall Defendants violated these prohibitions by "refusing to allow the fixed route bus stop to be moved from the very back of a large and dangerous

---

[2] Plaintiffs also alleged that the Mall Defendants violated the ADA by "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability or perpetuate the discrimination of others who are subject to common administrative control" under 42 U.S.C. § 12182(b)(1)(D). Plaintiffs mention this prohibition only once in their memorandum as part of a general discussion of the ADA's history and statutory requirements. (Doc. 54 at 20.) Plaintiffs therefore abandoned this claim and, to the extent they intended to assert it, it is dismissed.

4

parking lot and by limiting the bus routes that can utilize the bus stop on the Mall Defendants' premises." (Doc. 27 at ¶ 150.) Plaintiffs seek a declaratory judgment that the Mall Defendants have violated Plaintiffs' rights under Title III of the ADA and injunctive relief. *See* 28 C.F.R. § 36.501 (authorizing private suit for injunctive relief).

The Mall Defendants move for summary judgment on all of Plaintiffs' asserted theories of liability.

## II. SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden to inform the court of the basis for its motion and to identify the sections of the pleadings, depositions, answers to interrogatories, and admissions on file, along with any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The adverse party then bears the burden to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 24 (emphasis in original).

In deciding a motion for summary judgment, the court should not weigh the evidence, make credibility determinations, or judge the truth of the matter asserted, but

it must draw all "justifiable inferences" in the light most favorable to the non-movant. *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). This does not require the court to "wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). In sum, based on the evidence called to the court's attention, it must decide whether reasonable jurors could find by a preponderance of the evidence that the nonmovant is entitled to a verdict. *Anderson*, 477 U.S. at 252.

### III. ANALYSIS

#### A. Title III of the ADA

Title III of the ADA prohibits discrimination on the "basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To state a claim under Title III, the plaintiff must establish that (1) he or she is disabled within the meaning of the ADA; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the meaning of the ADA. *Young v. Kali Hosp., LTD.*, No. 2:07-CV-395, 2010 WL 3037017, at *4 (S.D. Ohio Aug. 2, 2010).

The Mall Defendants do not dispute—solely for purposes of their Motion for Summary Judgment—that Plaintiffs are disabled within the meaning of the ADA, that the Dayton Mall is a place of public accommodation, or that the Mall Defendants are

6

owners, lessors, or lessees of a place of public accommodation. (Doc. 53 at 18-19 (citing 42 U.S.C. § 12181(E).) The only question is whether a reasonable juror could find that the Mall Defendants discriminated against the Plaintiffs under the ADA by refusing to move the public bus stop at the Dayton Mall from its current location to a location immediately outside an accessible mall entrance.

### B. Plaintiffs' Reasonable Modification Claim

Title III of the ADA provides that disability discrimination includes:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]

42 U.S.C.A. § 12182(b)(2)(A)(ii). To establish a claim under a "reasonable modification" theory, the court must consider whether the requested policy or practice modification (1) is reasonable, (2) is necessary for the disabled individual, and (3) would fundamentally alter the nature of the activity at issue. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 683 n. 38 (2001). Plaintiffs bear the burden of proof for the first two elements, while defendants bear the burden for the third. *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059–60 (5th Cir. 1997). Once the plaintiff shows that the modification is reasonable and necessary, the defendant must make the modification unless it proves that doing so would alter the fundamental nature of the public accommodation. *Id.*

The Mall Defendants argue that Plaintiffs cannot establish that their requested modification is reasonable or necessary and, even if they could, the Mall Defendants are not required to make the modification because doing so would alter the fundamental

7

nature of their business. The Court only considers whether Plaintiffs can show that their requested modification is necessary because that question is dispositive of their claim.

By its plain language, Section 12182(b)(2)(A)(ii) requires an entity to make only those reasonable modifications that are "necessary" for a disabled individual to access the entity's "goods, services, facilities, privileges, advantages, or accommodations." The word "necessary" means "indispensable, vital, essential; requisite." Oxford English Dictionary (3rd ed. June 2003) (available by subscription at www.oed.com); *see also* Merriam-Webster's Collegiate Dictionary 774 (2002) (defining "necessary" to mean "absolutely needed: required"). Thus, an entity is required to make reasonable modifications to its policies, practices and procedures only when the disabled individual would be unable to access the place of public accommodation without it. In other words, the reasonable modification must be essential to afford access to the entity's goods and services. *See Murphy v. Bridger Bowl*, 150 F. App'x 661, 663 (9th Cir. 2005) ("Under Title III of the ADA, a place of public accommodation need not make a reasonable modification unless it is necessary to provide an individual with a disability full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations.").

In *PGA Tour*, the Supreme Court explained the difference between a situation in which a requested modification would merely assist a disabled individual and a situation in which the modification would be "necessary" under the ADA. *PGA Tour,* 532 U.S. at 681-683. The plaintiff, Martin, requested permission to use a golf cart to play in PGA TOUR sponsored events. He suffered from Klippel-Trenaunay-Weber Syndrome, a degenerative circulatory disorder that obstructs the flow of blood from his right leg back

8

to his heart. The disease is progressive, caused Martin great pain, and atrophied his right leg. By the end of Martin's college career, he could no longer walk an 18-hole golf course. "Walking not only caused him pain, fatigue, and anxiety, but also created a significant risk of hemorrhaging, developing blood clots, and fracturing his tibia so badly that amputation might be required." *Id.* at 668. The Supreme Court distinguished Martin's request to use a golf cart under these circumstances from "one that might be asserted by players with less serious afflictions that might make walking the course uncomfortable or difficult, but not beyond their capacity." *Id*. at 682. "In such cases," the Supreme Court continued, "an accommodation might be reasonable but not necessary." *Id.* The parties did not dispute, and the Supreme Court agreed, that modification of the PGA's no-golf cart rule was necessary for Martin to play golf on the PGA TOUR.

Here, Plaintiffs have not come forward with evidence from which a reasonable juror could find that they are unable to access the Dayton Mall via the current bus stop location. Rather, the individual Plaintiffs testified that they can ride the fixed route bus system to the Dayton Mall, but it is more difficult due to the transfers between bus routes required and the bus stop's distance from the Mall's entrance. (Doc. 54 at 8-12.) Likewise, NFB-Ohio members are "deterred from" using the fixed route bus system to travel to the Dayton Mall, but there is no assertion that they are incapable of doing so. (*Id.* at 15.)

Plaintiffs argue that the Mall Defendants "tacitly accept that the current bus stop and routes are not feasible for Plaintiffs." (*Id.* at 24.) While the Mall Defendants have accepted that Plaintiffs are disabled under the ADA, they have not conceded that the limitations created by their disabilities make it impossible for them to use the fixed route

9

bus system to access the Dayton Mall. *Cf. Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004) (parties did not dispute that the plaintiff, who was a C-5 quadriplegic, required both a wheelchair and an aide to attend movie theaters). Nonetheless, even assuming that Plaintiffs could show that they are incapable of using the fixed route bus system due to their disabilities, they still have not shown that their requested modification is necessary for them to access its "goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C.A. § 12182(b)(2)(A)(ii). This is because Plaintiffs can access the Dayton Mall using alternative means of transportation—specifically the paratransit services provided by the RTA.

The Mall Defendants first argue that they permit route diversion services. If the RTA were to implement these services, bus drivers could, on request, divert from their normal route to drop off a disabled person directly in front of an accessible mall entrance, instead of the bus stop. The Mall Defendants claim that the RTA has not widely communicated this option to its customers and, as a result, many of them, including the individual Plaintiffs, are unaware of it. Plaintiffs counter that route diversion is unworkable in any event because, upon leaving the Mall, "[s]ince the bus stop is so far away from the curb near the entrance where a rider would wait for route diversion service, there is no way for the bus driver to know when a rider is there." (Doc. 54 at 29.)

The Mall Defendants compare this case to *Rose v. Wayne County Airport Authority*, 210 F. Supp. 3d 870 (E.D. Mich. 2016). In *Rose*, the plaintiffs alleged that disabled persons could not access the airport terminal from the public bus stop because it was located in a separate ground transportation center across the street. In order to get to the terminal

from the bus stop, customers had to take a pedestrian bridge that ran over the street—a distance of approximately 600 feet. After plaintiffs brought suit, however, the airport authority offered to provide route diversion services to disabled persons who requested to be dropped off at the terminal entrance. The court found that this service mooted the plaintiffs' claim for a reasonable modification because it effectively provided the relief that they sought. *Rose*, 210 F. Supp. 3d at 892.

There are similarities between *Rose* and this case. Like the bus stop in *Rose*, the bus stop at the Dayton Mall is approximately 600 feet from its entrance. Like the airport authority in *Rose*, the Mall Defendants have offered to permit route diversion services. The availability of route diversion services is not dispositive here, however, because Plaintiffs have raised a question of fact regarding its utility, namely whether disabled persons leaving the Dayton Mall would be able to notify a bus driver to divert to the mall entrance for pick up. The availability of paratransit services for disabled persons is more compelling.

Under the ADA, a public entity which operates a fixed route system must provide "paratransit and other special transportation services to individuals with disabilities . . . that are sufficient to provide to such individuals a level of service (1) which is comparable to the level of designated public transportation services provided to individuals without disabilities using such system; or (2) in the case of response time, which is comparable, to the extent practicable, to the level of designated public transportation services provided to individuals without disabilities using such system." 42 U.S.C.A. § 12143. It is

discriminatory for a public transportation provider not to provide comparable paratransit services to disabled users. *Id.*

The RTA provides a paratransit service for disabled persons—as it must—called RTA Connect. Its service area is at least coextensive with federal requirements, 49 C.F.R. § 37.131(a)(1)(i), *i.e.*, that transit entities "provide complementary paratransit service to origins and destinations within corridors with a width of three-fourths of a mile on each side of each fixed route." (Doc. 53-49 at 2-3.) A disabled person who is eligible to use RTA Connect may schedule a vehicle to pick them up at their residence, no later than a day in advance, and pay a fee that is no more than twice the fare charged to an individual paying full fare for a similar trip on the fixed route system. 49 C.F.R. § 37.131. It is undisputed that the Mall Defendants permit and encourage the use of RTA Connect to transport disabled patrons directly to and from an accessible mall entrance.

Plaintiffs suggest that, by relying on paratransit services, the Mall Defendants are shirking their own obligation to provide access for disabled individuals under the ADA. Plaintiffs fail to cite any authority for this argument. To the contrary, the Supreme Court directed courts to make "an individualized inquiry" into the facts and circumstances in a given case to determine whether a particular plaintiff has established a reasonable modification claim. *PGA Tour*, 532 U.S. at 688. Following this directive, courts consistently consider existing alternatives to a plaintiff's requested modification, regardless of who provides those alternatives. *See, e.g.*, *Jones v. City of Monroe, MI*, 341 F.3d 474, 481 (6th Cir. 2003) (considering "evidence of alternative accommodations available to Jones such as a service which will pick her up at any Monroe parking lot,

based on a schedule constructed personally for Jones, and take her to the door of her office building" in assessing reasonableness of requested modification); *Coleman v. Phoenix Art Museum*, No. CV08-1833-PHX-JAT, 2009 U.S. Dist. LEXIS 38905 (D. Ariz. Apr. 22, 2009) (plaintiff failed to meet burden of showing that a hip chair device was necessary to accommodate his disability when the museum offered to provide two different kinds of wheelchairs), aff'd 372 F. App'x 793 (9th Cir. 2010); *Dryer v. Flower Hosp.*, 383 F. Supp. 2d 934 (N.D. Ohio 2005) (plaintiff's request to use patient's oxygen ports at hospital was not reasonable where she had oxygen tanks which were prescribed and available to her at her home).

Plaintiffs also argue that reliance on the paratransit service violates the ADA's "integration mandate" and "separate benefit prohibition." (Doc. 54 at 25 (citing 42 U.S.C. § 12182(b)(1)(B) and (b)(1)(A)(iii)).) Section 12182(b)(1)(B) provides that "[g]oods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual." The ADA mandates that the RTA provide paratransit services for disabled individuals unable to use the fixed route system. It is illogical that the same service mandated by the ADA would be discriminatory under the ADA. Rather, it makes sense that, for people who require paratransit services, those services are "the most integrated setting appropriate to the needs of the individual." *Id.*

Section 12182(b)(1)(A)(iii) states that it is discriminatory to provide a disabled individual "with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, ***unless such action is***

13

*necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others*." 42 U.S.C. § 12182(b)(1)(A)(iii) (emphasis added). Thus, the provision of a separate benefit is not unlawful if it is necessary to provide a service as effective as that provided to others. Again, RTA Connect is provided to disabled individuals who are unable to use the fixed route system—precisely the situation contemplated in the exception to this "separate benefit prohibition." It also bears mention that RTA Connect is permitted to stop at the same mall entrances used by other visitors to the Dayton Mall.

Plaintiffs also argue that RTA Connect is not a viable alternative because only certain persons are eligible to use it. Under the applicable ADA regulations, however, any disabled person who is unable to access the Dayton Mall via the fixed route system should be eligible to use RTA Connect to do so. *See* 42 U.S.C.A. § 12143(c)(1) and 49 C.F.R. Pt. 37, App. D. (If that is not the case, then the RTA has violated the ADA, not the Mall Defendants.) That there are disabled persons who can access the Dayton Mall via the fixed route system, but are not eligible for RTA Connect, is beside the point. Disabled persons who are able to access the Dayton Mall via the fixed route system cannot establish that the requested modification is necessary under the ADA.

Plaintiffs also argue that RTA Connect is less convenient and more expensive than the fixed route service. The ADA requires paratransit services to provide a "level of service" that is "comparable to the level of designated public transportation services provided to individuals without disabilities using such system." 42 U.S.C. § 12143(a)(1). The ADA and the regulations promulgated thereunder set forth the specific requirements

14

that must be met in order for a paratransit service to meet this level of service. Plaintiffs do not allege that RTA Connect violates any statute or regulation under the ADA. Thus, RTA Connect must be deemed comparable to the RTA's fixed route service for purposes of the ADA. In *PGA Tour*, the Supreme Court made it clear that a modification may not be necessary where disabled persons have access to a public accommodation's goods and services, even though they may be uncomfortable or have more difficulty in doing so. 532 U.S. at 682. Here, Plaintiffs can access the Dayton Mall through an ADA-compliant paratransit service. That service might be more difficult to use than the fixed route system, but it is comparable to the fixed route system and not prohibitively expensive.[3]

Due to the availability of RTA Connect, Plaintiffs cannot establish that their requested modification is necessary under the ADA. The Court therefore grants summary judgment for the Mall Defendants on Plaintiffs' reasonable modification claim.

### C. **Plaintiffs' Architectural Barrier Claim**

Plaintiffs also asserted an architectural barrier claim under 42 U.S.C. § 12182(b)(2)(A)(iv). (Doc. 27 at ¶ 149.) In their Motion for Summary Judgment, the Mall Defendants demonstrated that the fixed route bus stop complies with the ADA's Accessibility Guidelines ("ADAAG"), which set forth the architectural design standards for places of public accommodation. In response, Plaintiffs referred to this claim in the past tense—stating that "Plaintiffs did have a claim . . . regarding the ADAAG accessible route of travel requirement"—and note that, after this lawsuit was filed, the Mall

---

[3] The RTA's regular cash fares for an adult are $2.00 one-way. The fare for RTA Connect is $3.50 one-way, 50 cents less than the cap under 49 C.F.R. § 37.131(c). RTA, Fares & Passes, http://www.i-riderta.org/how-to-ride/fares-passes (last visited June 6, 2018).

Defendants constructed a sidewalk extending from the bus stop area to the inner ring road on the South side of the Mall parking lot. (Doc. 54 at 48-49.) These statements suggest that Plaintiffs no longer have an architectural barrier claim, although they do not explicitly say so.

Instead, Plaintiffs assert that there are still "problems with the sidewalk from the bus stop to the Mall entrance." (Doc. 54 at 49.) They cite their expert's deposition for the assertion that the bus stop does not comply with ADA Accessibility Guideline No. 1002.2 (Bus Stop Pads), which dictates the distance between the bus stop platform and the curb or pavement. (*Id.* at 49, citing Doc. 54-54 at 78-79.) Reviewing the deposition transcript, however, Plaintiffs' expert opined that there might be a violation of the guideline, but he did not know because he did not take any measurements. (Doc. 54-54 at 79.) This is not sufficient to create a genuine issue of material fact. *Anderson*, 477 U.S. at 250. The Court therefore grants summary judgment for the Mall Defendants on Plaintiffs' architectural barrier claim.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** the Mall Defendants' Motion for Summary Judgment. This case shall be **TERMINATED** on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, June 8, 2018.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE